UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL T. D. REYNOLDS,

                                Case No. No.  20-10891

               Plaintiff,            District Judge Robert H. Cleland

v.                              Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.

_____/

## REPORT AND RECOMMENDATION

    Plaintiff Michael T.D. Reynolds brings this action under 42 U.S.C. § 405(g), challenging Defendant Commissioner's denial of Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment  [ECF No. 20] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 14] be DENIED.

## I.   PROCEDURAL HISTORY

    On April 28, 2017, Plaintiff filed applications for DIB and SSI, alleging disability as

of September 23, 2014. (ECF No. 12, PageID.223.).[1]  Upon initial denial of the claim, he

requested an administrative hearing, held on October 16, 2018 in Oak Park, Michigan.

PageID.89.  Administrative Law Judge ("ALJ") Kari Dening presided.  Plaintiff, represented

at the hearing by non-attorney representative Dannelly C. Smith, testified (Pg.ID.94) as did

Vocational Expert ("VE") Erin O'Callaghan  (Pg.ID.124).   On January 24, 2019, ALJ

Dening determined that Plaintiff was not disabled. (Pg.ID.71-82).  On February 6, 2020, the

Appeals Council declined to review the ALJ's decision (Pg.ID.57).    Plaintiff filed a

complaint in this Court on April 7, 2020.

## II.  BACKGROUND FACTS

Plaintiff, born May 31, 1993, was 25 at the time of the ALJ's decision  (Pg.ID. 82).

He left school after 9th grade (Pg.ID.312).  He worked previously as a production worker.

(Pg.ID.260).  He alleges disability as a result of Attention Deficit Hyperactivity Disorder

("ADHD") (Pg.ID.311.).

### A.  Plaintiff's Testimony

Plaintiff lived in Detroit, Michigan (Pg.ID.94).  He did not drive, and his non-attorney

representative drove him to the hearing (Pg.ID. 95).  He left school after ninth grade to help

take care of his mother (Pg.ID. 96).  He had been sent to his mother's house due to a safety

concern at his grandmother's house (Pg.ID.111).  At the time of the hearing, he lived with

---

[1] References to the administrative transcript, ECF No. 12, are henceforth referred
to by PageID only.

his father. *Id.*  He had a dog.  *Id.*  He believed that he was laid off from one of his jobs after failing to keep up with his job responsibilities (Pg.ID. 97-98).  His father helped him fill out the application for one of his former positions (Pg.ID.108).  He was able to use public transportation and a mobile phone (Pg.ID. 99).  Coworkers helped him find a bus route to commute to work (Pg.ID.110).  He was unsure how many hours he worked each week in his most recent position (Pg.ID.100).

In response to questioning by his attorney, Plaintiff reported that he was able to read "a little bit" but could not read big words (Pg.ID.107).  While Plaintiff's father was in jail, Plaintiff's girlfriend took care of him by bringing him food and buying his clothes (Pg.ID.114, 118).  He believed he was disabled due to reading and articulation deficiencies (Pg.ID.115).  While in school, he had been prescribed Ritalin which made him calmer and allowed him to "think" (Pg.ID.115-116).  He "started going down the drain" after stopping Ritalin (Pg.ID.116).  He was able to care for his personal needs and prepare simple meals (Pg.ID.117-119).  His mother did his laundry chores (Pg.ID.119).

### B.  Medical Records

A September, 2011 non-examining evaluation found mild limitation in activities of daily living and social functioning and moderate difficulty in maintaining concentration, persistence, or pace under the "B Criteria" for assessing whether a mental condition is disabling (Pg.ID.397).  In a December, 2011 non-examining assessment, Morgan Kyle, Psy.D. also found mild limitation in activities of daily living and social functioning and

moderate difficulty in maintaining concentration, persistence, or pace (Pg.ID.424, 434).  In an accompanying mental residual functional capacity assessment, Dr. Kyle found moderate limitation in the ability to understand, remember, and carry out detailed instructions; concentrate for extended periods; stay within a schedule; complete a work week without psychological limitation; adapt to workplace changes; and set realistic goals (Pg.ID.439). Dr. Kyle found that it would not be "a substantial limitation" for Plaintiff to perform "simple two-step tasks" (Pg.ID.440).  He found that Plaintiff would require "additional time and support" to adapt to workplace changes and "developing and implementing work related goals." *Id.*  In February, 2012, Terri C. Dixon, Ph.D. found "severe delayed receptive and expressive language development" (Pg.ID.444).

In September, 2017, Erik J. Makie, Psy.D. performed a consultative examination, noting Plaintiff's report that he could not sit still or focus (Pg.ID.456).  Plaintiff also reported that he was unable to perform any  jobs due to problems reading.  *Id.*  He denied the current use of psychotropic medication, stating that he did not like pills. *Id.*  He denied depression, anxiety, or mood disturbances. *Id.*  Plaintiff reported that he spent his time socializing and playing games (Pg.ID.457).  He reported no difficulty in household chores, preparing food, or self-care tasks.  *Id.*

Dr. Makie noted that Plaintiff was fully oriented with poor spelling skills (Pg.ID.458). He was able to name current and former presidents and knew  that efforts to set the minimum wage at $15 were in the news.  *Id.*  Intelligence testing showed a full scale IQ of 71, verbal

-4-

comprehension, 70, perceptual reasoning, 79, working memory, 66, processing speed, 86, auditory memory, 74, visual memory, 78, visual working memory, 83, immediate memory, 70, and delayed memory, 74 (Pg.ID.459-460).  As to the IQ scores, Dr. Makie noted that "[i]n general profiles of this nature suggest somewhat diminished overall memory ability and suggests the necessity for re-teaching/practice and the presentation of new information in slower, smaller portions to ensure proper coding and synthesis" (Pg.ID.460).

Dr. Makie made the following conclusions based on his one-time examination and testing:

> [I]t is my impression   that Mr. Reynolds is mentally capable of understanding, attending to, remembering,  and carrying out instructions related to at least  unskilled/repetitive work-related behaviors. Regarding social/interactional functioning as it  pertains to work related behavior,  it is my impression that Mr. Reynolds's abilities to respond appropriately to co-workers  and  supervision  and  to adapt to change and stress in the workplace  are  not overtly impaired and he appears capable of appropriate social  interactions  and  interpretations/responses  to  novel  situations (Pg.ID.641).

In September, 2017, Barbara Moura, Psy.D. performed a non-examining review of the  treating  and  consultative  records,  finding  moderate  limitation  in  the  ability  to understand, remember, or apply information and concentrate, persist, or maintain pace with mild adaptive limitations due to neurodevelopmental disorders (Pg.ID.137-138).

## C.  Vocational Testimony

VE  O'Callaghan  classified  Plaintiff's  past  work  as  a  production  worker  as

exertionally medium and unskilled[2] (Pg.ID.125).   The ALJ then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, educational level, and work history:

> [W]ork at any exertional level with the following limitations: never be exposed to workplace hazards such as ropes, ladders, scaffolds or unprotected heights, understand and remember simple instructions, engage in simple duties defined as those that do not require the ability to read or write, that can be learned after short demonstration, and that require little or no judgment to perform. Engage in predictable work activity, defined as that with only occasional changes in the work setting or general nature of the task performed, and engage in no production-pace tasks such as assembly line work or fast food front counter work. Given that, would the past work exist? (Pg.ID.125).

The VE testified that the above limitations would preclude Plaintiff's past relevant work but would allow for the exertionally medium, unskilled work of a packer (600,000 positions in the national economy); bench assembler (400,000); and sorter (250,000) (Pg.ID.125-126.).   She stated that being off task for more than 15 percent of the workday would be work preclusive (Pg.ID.126).   She stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*")

---

[2]

    20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;   *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

and her own professional experience (Pg.ID. 126.).

### D.  The ALJ's Determination

The ALJ began her determination by finding no basis to reopen a March 1, 2011 application for benefits that was previously denied (Pg.ID.71).  Next, addressing the current claim for benefits, she found that Plaintiff engaged in substantial gainful activity ("SGA") between the alleged onset date and the day of the determination (Pg.ID.74).  She found that the work activity was not "accommodated work" which would have precluded it from being considered SGA (Pg.ID.74-75).  She noted however, that within the period under consideration, Plaintiff did not work for a period of a least 12 months (Pg.ID.509).

Proceeding to Step Two of the analysis, ALJ Deming found that Plaintiff experienced the severe impairment of intellectual disorder but that the condition did not meet or medically equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*   She found that Plaintiff experienced moderate limitation in understanding, remembering, or applying information; concentration, persistence, or pace; and adaptation but mild limitation in interacting with others (Pg.ID.76).

The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for work at all exertional levels with the following non-exertional restrictions:

> Never be exposed to workplace hazards (such as ropes, ladders, scaffolds, or unprotected heights. Understand and remember simple instructions. Engage in simple duties, defined as those that do not require the ability to read or write,  that can be learned after a short demonstration, and that

require little or no judgment to perform. Engage in  predictable work
activity, defined as that with only occasional changes in the  work setting
or general nature of the tasks performed. Engage in no production-paced
tasks, such as assembly line work, or fast food front counter work
(Pg.ID.77)(punctuation altered). .
.

Citing the VE's testimony (Pg.ID.125-126) the ALJ determined that Plaintiff could

work as a packer, bench assembler, and sorter (Pg.ID.81).

The ALJ found Dr. Makie's September, 2017 opinion that Plaintiff could

perform repetitive unskilled work persuasive, noting that it was not contradicted by any

other of the medical evidence (Pg.ID.79).  She found that the evidence predating the

current period under consideration was "not persuasive" because it applied "prior

mental health listings as well as childhood listings" which were not relevant to the

current application (Pg.ID. 80).

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing

administrative record and asks whether it contains 'sufficien[t] evidence' to support the

agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154

(2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).  The district court reviews

the final decision of the Commissioner to determine whether it is supported by

substantial evidence.  *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g).   "Substantial

evidence is defined as 'more than a scintilla of evidence but less than a preponderance;

it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir.  1986)(*en banc*).  Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).  However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight."  *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. § 404.1520.   The plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391–92 (6th Cir. 1999).

## V.  ANALYSIS[3]

### A.  Dr. Makie's Findings

Plaintiff's first argument pertains to Dr. Makie's September, 2017 consultative findings.  (ECF No. 14, PageID.478).   He contends that although the ALJ found Dr.

---

[3]

Title II of the Social Security Act "'provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need'" while "Title XVI provides supplemental security income benefits 'to financially needy individuals who are aged, blind, or disabled regardless of their insured status.'"  *Smith v Berryhill*, 204 L Ed 2d 62; 139 S Ct 1765, 1772 (2019)(*quoting Bowen v. Galbreath*, 485 U.S. 74, 75, 108 S.Ct. 892, 99 L.Ed.2d 68 (1988)).  Because "regulations that govern the two programs are . . . equivalent," the Court will refer  only to the regulations governing Title II claims, located at 20 C.F.R.  Pt. 404 .  *Id.* (*citing Sims v. Apfel*, 530 U.S. 103, 107, n. 2, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000)).

Makie's findings "persuasive," the Residual Functional Capacity ("RFC") found in the administrative opinion does not reflect all of Dr. Makie's findings. *Id.* Specifically, he contends that the ALJ ignored the portion of Dr. Makie's findings supporting a limitation to "sheltered" or "accommodated" work. (Pg.ID.480)(*citing* 20 C.F.R. § 404.1573(c)).

In September, 2017 Dr. Makie performed a one-time consultative examination which included an interview, assessment of Plaintiff's mood, affect, orientation, and memory and IQ testing[4] (ECF No. 12, PageID.457).  Dr. Makie noted that Plaintiff was fully oriented, in contact with reality, and had normal thought content. (Pg.ID. 457-458.).  Plaintiff exhibited a normal mood and did not appear confused (Pg.ID.458).  IQ scores ranged from a "low average" score in visual working memory to "extremely low" in working memory (Pg.ID.459).   In regard to the test scores, Dr. Makie

---

[4]

Plaintiff applied for benefits on April 24, 2017.  For claims made on or after March 27, 2017, the ALJ will weigh both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record. 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"). The factors to be considered in evaluating medical opinions include supportability and consistency with the record as a whole; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose and extent of the treating relationship; whether the source has examined the claimant; specialization; and any other factors that support or undermine the medical opinion. §§ 404.1520c(c). ALJs must articulate the "most important factors of supportability and consistency" of the medical opinions but "are not required to[ ] explain" the consideration given to the remaining factors. § 404.1520c(b).

commented that "[i]n general profiles of this nature suggest somewhat diminished overall memory ability and suggests the necessity for re-teaching/practice and the presentation of new information in slower, smaller portions to ensure proper coding and synthesis" (Pg.ID.460).

Then, based on both the IQ scores and interview, Dr. Makie made the following statement at the end of his report:

> [I]t is my impression that Mr. Reynolds is mentally capable of understanding, attending to, remembering, and carrying out instructions related to at least unskilled/repetitive work-related behaviors. Regarding social/interactional functioning as it pertains to work related behavior, it is my impression that Mr. Reynolds's abilities to respond appropriately to co-workers and supervision and to adapt to change and stress in the workplace are not overtly impaired and he appears capable of appropriate social interactions and interpretations/responses to novel situations (Pg.ID.641).

The ALJ cited Dr. Makie's statement in support of the non-disability finding, noting that Plaintiff was socially appropriate during the examination, got along with others, and was able to perform a sizable range of household and personal care activities (Pg.ID.78). She noted that while Plaintiff did not take medication and was not receiving mental health counseling, he did not exhibit signs of ADHD. *Id.* She acknowledged the IQ scores, but cited Dr. Makie's conclusion that Plaintiff was nonetheless capable of performing unskilled work. (Pg.ID.79). She found Dr. Makie's findings persuasive, noting that it was not contradicted by "any other medical evidence of record." *Id.*

Plaintiff's argument that the ALJ did not account for all of Dr. Makie's findings in

-12-

crafting the RFC or that Dr. Makie believed that Plaintiff was incapable of substantial gainful activity ("SGA") is not well taken.  Plaintiff relies on *Young v Comm'r of Soc Sec,* 351 F. Supp. 2d 644, 649 (E.D. Mich, 2004) in which the Court remanded a claim for further fact-finding on the basis that the non-disability determination, relying on one portion of the evidence, failed to acknowledge compelling evidence supporting the opposite conclusion (ALJ "may not pick and choose the portions of a single report, relying on some and ignoring others, without offering some rationale for his decision"). *Id.*

*Young* is inapplicable for multiple reasons.  First, Dr. Makie's comments regarding the IQ scores ("[i]n *general* profiles of this nature" are consistent with "diminished overall memory ability and suggests the necessity for re-teaching/practice and the presentation of new information in slower, smaller portions to ensure proper coding and synthesis") cannot be read to state that Plaintiff actually experienced these deficiencies, much less that such deficiencies precluded unskilled work.  (Pg.ID.459)(emphasis added).  Second, to the extent that IQ testing showed some degree of intellectual limitation, Dr. Makie's conclusion (based on both the interview and the test scores) states unambiguously that Plaintiff could perform a range of unskilled work.  (Pg.ID.161).  Third, the ALJ provided an accurate summation of Dr. Makie's findings and conclusions.  While  Dr. Makie's comments directly following the IQ scores are not included verbatim in the administrative opinion, the RFC restricting Plaintiff to "simple instructions," "simple duties," no reading or writing, tasks that can be learned "after a short demonstration," and only occasional

work-related changes adequately reflect Dr. Makie's findings (Pg.ID.77).   In short,  the
RFC reflects the possible import of the low IQ scores as well as Dr. Makie's conclusion
that they would not prevent unskilled work.

For overlapping reasons, Plaintiff's argument that his intellectual deficiencies limit
him to "sheltered" or "accommodated" work is not supported by either Dr. Makie's
findings or the record as a whole.  *See* 20 C.F.R. § 404.1573(c) ("[i]f your work is done
under special conditions, we may find that it does not show that you have the ability to do
substantial  gainful  activity").   "If  you  are  unable . . . to do ordinary or simple tasks
satisfactorily without more supervision or assistance than is usually given other people
doing similar work, this may show that you are not working at the substantial gainful
activity level. § 404.1573(b).  Likewise, "work that involves minimal duties that make
little or no demands on you and that are of little or no use to your employer, or to the
operation of a business if you are self-employed, this does not show that you are working
at the substantial gainful activity level." *Id.*  Other factors to be considered include the
following:

> (1) You required and received special assistance from other employees in
> performing your work; (2) You were allowed to work irregular hours or take
> frequent rest periods; (3) You were provided with special equipment or
> were assigned work especially suited to your impairment; (4) You were able
> to work only because of specially arranged circumstances, for example,
> other persons helped you prepare for or get to and from your work; (5) You
> were permitted to work at a lower standard of productivity or efficiency
> than other employees; or (6) You were given the opportunity to work
> despite your impairment because of family relationship, past association
> with your employer, or your employer's concern for your welfare.

§ 404.1573(c).

Plaintiff's contention that he is limited to accommodated work is based primarily on Dr. Makie's finding that an individual with Plaintiff's IQ scores would require "re-teaching/practice" and "the presentation of new information in slower, smaller portions to ensure proper coding and synthesis." (ECF No. 14, PageID.480.)   However, as discussed above, the finding that a person of Plaintiff's intelligence level *could* require re-teaching and repeated instructions does not imply that Plaintiff experiences these limitations or that they preclude SGA.  Plaintiff's argument that the limitations generally associated with the IQ scores "directly correlate[] to the accommodated work standards described in § 404.1573(c)" is particularly specious, given Dr. Makie's ultimate conclusion that Plaintiff could perform a range of unskilled work.  (ECF No. 14, PageID.480.).

Further, Plaintiff's testimony regarding his work experience does not suggest that his former work was "accommodated."  To be sure, Plaintiff testified that he believed that he was laid off from one position after working too slowly and that his father helped him fill out an application for another job (ECF No. 12, PageID.98, 102).  However, Plaintiff testified that after he and his father were assigned to different shifts, he traveled unaccompanied to and from work by bus (PageID.102, 110).  Aside from his father's help in securing employment, the record does not suggest that his former work was accommodated.  As such, the ALJ's finding of "no evidence" that Plaintiff had worked

-15-

"in a sheltered work environment" and her ultimate finding of non-disability  is well supported (Pg.ID.74).

### B.  Dr. Kyle's December, 2011 Opinion

Plaintiff also argues that  the ALJ erred by failing to acknowledge or credit Dr. Kyle's December, 2011 non-examining finding of moderate difficulty in understanding, remembering, or carrying out detailed instructions.  (ECF No. 14, PageID.487).

As a threshold matter, Plaintiff is incorrect that the ALJ did not acknowledge Dr. Kyle's findings.  The ALJ found that the records predating the current application for benefits were "not persuasive" because they "utilize[d] the prior mental health listings . . ." (ECF No. 12, PageID.80).  The ALJ is correct that since Plaintiff's prior application was denied, rules regarding mental impairments, effective January 17, 2017, have resulted in new paragraph B criteria more applicable to assessing work abilities. *See* 81 Fed. Reg. 66138-01, 2016 WL 5341732, at *66161 (Sept. 26, 2016).  For example, the prior category of "activities of daily living" has been replaced with  the ability to "understand, remember, or apply information" (ECF No.12, PageID.147). [5]

---

[5]

"A close examination of the new versus old paragraph B criteria indicates significant areas of overlap such that an evaluation of an individual under the old criteria would inform and assist in evaluating an individual under the new criteria." *Montgomery v Comm'r of Soc Sec,* No. 3:17-CV-00617-CHL, 2019 WL 1427560, at *7 (W.D. Ky. March 29, 2019)(in the absence of a newer B criteria assessment, the ALJ did not err by according weight to an assessment applying the older standards).  In contrast here, the record includes an assessment under the new criteria made six years after the Dr. Kyle's findings.

More obviously, the ALJ found that the residual functional capacity findings by the one-time and non-examining sources, including Dr. Kyle, "support[] a finding that the claimant is not disabled" (Pg.ID.80).   Dr. Kyle's assessment, made almost three years before Plaintiff's alleged onset of disability in the present application, cannot be interpreted to direct a disability finding.   Dr. Kyle found only moderate limitation in concentration, persistence, or pace with otherwise mild psychological limitation (Pg.ID.434).   To be sure, in an accompanying mental residual functional capacity assessment Dr. Kyle found moderate limitation in the ability to understand, remember, and carry out detailed instructions; concentrate for extended periods; stay within a schedule; complete a workweek without psychological limitation; adapt to workplace changes; and set realistic goals (Pg.ID.439).   However, consistent with Dr. Makie's opinion, Dr. Kyle concluded that the limitations did not preclude work involving  "simple two-step tasks" (Pg.ID.440).   These findings were accounted for in hypothetical question posed to the VE and the RFC limiting Plaintiff to unskilled work with "simple instructions," "simple duties," no reading or writing, tasks that can be learned "after a short demonstration," and only occasional work-related changes (Pg.ID.77)( *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579   Fed. Appx. 426, 437, 2014 WL 4400999 at *10 (6th Cir. September 8, 2014))(moderate concentrational limitations adequately addressed by restricting the claimant to unskilled, routine, repetitive work).

Accordingly, because the ALJ's determination was within the "zone of choice"

accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court.  *Mullen v. Bowen, supra*.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [ECF No. 20] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 14] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all  the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order

and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE
JUDGE

Dated: April 2, 2021

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on April 2, 2021, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen